UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-277-RJC
(3:15-cr-20-RJC-2)

| | |
|---|---|
| RICARDO REYNSO REBOLLAR, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

I.  BACKGROUND

From 2011 to the end of 2014, Petitioner was a member of a cocaine-trafficking conspiracy that distributed large quantities of cocaine in Gaston County, North Carolina, and elsewhere. (Crim. Case No. 3:15-cr-20-RJC-2, Doc. No. 99 at ¶ 7: PSR). Petitioner's brother, Jose, was a leader of the conspiracy. See (Id. at ¶¶ 8, 29). During the conspiracy, Jose directed Petitioner to speak with a source about future deliveries of multiple kilogram quantities of cocaine. (Id. at ¶ 18). As part of the conspiracy, Petitioner delivered large quantities of cocaine, drove a "cover car" to protect the drug deliveries from law enforcement or theft, collected drug proceeds, and met with the sources of supply. (Id. ¶¶ 19, 21 23, 26-27, 31, 45, 49-53). Members of the conspiracy carried firearms for protection while working. (Id. at ¶ 59). When Petitioner was arrested, law enforcement officers found four firearms at his residence. (Id. at ¶ 25).

A grand jury indicted Petitioner, charging him with conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§

841(b)(1)(A), 846 (Count One); possession with intent to distribute 500 kilograms or more of cocaine, and aiding and abetting the same, in violation of 21 U.S.C. § 841(b)(1)(B) and 18 U.S.C. § 2 (Count Four); and aiding and abetting possession of a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. §§ 924(c), 2 (Count Six). (Id., Doc. No. 45: Indictment).

Petitioner agreed to plead guilty to Count One of the Indictment. (Id., Doc. No. 65 at ¶ 1: Plea Agrmt.). As part of Petitioner's plea agreement, the Government agreed to dismiss the remaining counts against him, and the parties agreed to recommend that the Court find that the amount of cocaine reasonably foreseeable to Petitioner was more than 50 kilograms, but less than 150 kilograms; that Petitioner should receive a three-level reduction for acceptance of responsibility; and that the Government would not oppose a sentence at the bottom of the applicable guidelines range. (Id. at ¶ 7). The parties reserved their rights to advocate whether Petitioner should receive a two-level enhancement under U.S.S.G. § 2D1.1(b)(1), for possessing a dangerous weapon in connection with the offense, as well as to argue regarding other adjustments, departures, or variances. (Id.). Petitioner agreed to waive the right to challenge his conviction and sentence on direct appeal or in any post-conviction proceeding, except as to claims for ineffective assistance of counsel or prosecutorial misconduct. (Id. at ¶¶ 18-19). The plea agreement provided that there were no other "agreements, representations, or understandings between the parties in this case." (Id. at ¶ 28).

At the plea hearing, Petitioner affirmed that he understood the charges against him and the plea agreement, including the parties' reservation of their rights to argue whether he should receive a two-level weapon enhancement under U.S.S.G. § 2D1.1(b)(1), as well as the waiver of his right to challenge his conviction or sentence on direct appeal or in any post-conviction

proceeding. (Id., Doc. No. 144 at 5, 8-14: Plea Tr.). He also stated that he understood that the Sentencing Guidelines range could not be determined until after the presentence report was prepared, that he could receive a sentence higher or lower than the guidelines range, and that he would still be bound by his guilty plea even if he received a higher sentence. (Id. at 6-7).

Petitioner testified that he had had sufficient time to discuss any potential defenses with his attorney, that he was satisfied with his attorney's services, and that no promises outside of the plea agreement had been made to induce him to plead guilty. (Id. at 15). The magistrate judge found that Petitioner was pleading guilty knowingly and voluntarily and accepted his guilty plea. (Id. at 16).

A probation officer prepared a presentence report in July 2015, recommending that, based on the amount of drugs involved in the offense, Petitioner be sentenced at a base offense level of 34, that he receive a two-level upward adjustment under U.S.S.G. § 2D1.1(b)(1) for possessing a dangerous weapon, and that he receive a three-level downward adjustment for acceptance of responsibility, for a total offense level of 33. (Id., Doc. No. 99 at ¶¶ 66-67, 73-75). The probation officer determined that Petitioner's criminal history category was III and that the advisory guidelines range was 168 to 210 months of imprisonment. (Id. at ¶¶ 93, 121).

Petitioner's attorney objected to the PSR, arguing that Petitioner did not possess a firearm in connection with his drug-trafficking offense, that the residence where the firearms were found belonged to his mother, that none of the firearms were found in the bedroom where he had been residing, that the firearms were registered to another person, and that it was his brothers who had kept the firearms at the house. (Id., Doc. No. 94: Objection to PSR). Defense counsel also argued that Petitioner had a minor role in the offense compared to his codefendants and that, although he understood the scope of the enterprise, his activities "were limited to being a

3

courier." (Id. at 1). The Government filed a sentencing memorandum supporting the recommendations in the PSR. (Id., Doc. No. 130: Sent. Memo.). The Government attached debriefing reports showing that, during the conspiracy, Petitioner had delivered one to five kilograms of cocaine an average of two to three times per week and that in 2012 Petitioner had obtained a new source of supply for the conspiracy. (Id. at 1-2: Sent. Memo.; Doc. Nos. 130-31; 130-2). One of the reports noted that Petitioner mostly stayed at his mother's home, that he had received a firearm as a gift from one of the coconspirators in 2014, and that he had a shotgun that he kept at his mother's house. (Id., Doc. No. 130-1 at 4). A coconspirator stated that he always carried a firearm, but that he had had to persuade Petitioner not to take a firearm during one of his drug deliveries. (Id.). A codefendant also noted that the coconspirators all carried a weapon while operating the cover car. (Id. at 5).

At sentencing in May 2016, defense counsel again argued that Petitioner should not receive an enhancement for possession of a firearm in connection with his drug-trafficking offense and that he was a courier and thus played only a minor role in the offense. (Id., Doc. No. 145 at 3-5: Sent. Tr.). The Government argued that Petitioner was not entitled to a minor role adjustment because he was involved in numerous aspects of the conspiracy, including delivering kilogram quantities of cocaine; picking up money; and acting as a cover car for deliveries. (Id. at 6). The Government also argued that a firearm was used in the cover car and that a coconspirator had given Petitioner a handgun and also had discussed the fact that Petitioner had a shotgun. (Id.). Both of these firearms were found in Petitioner's room at his mother's house. (Id.). Defense counsel countered that Petitioner's mother told him that the shotgun was found in his attic, but the other firearms were found in his brother's room. (Id. at 7). This Court overruled Petitioner's objections, finding that the firearms were found at his residence and it was

4

clearly probable that the firearms were connected to his offense. (Id. at 8). Based on the information from the PSR, as well as the co-conspirator debriefings, the Court found that Petitioner played more than a minor role in the offense and, therefore, should not receive a reduction based on his role in the offense. (Id. at 9).

This Court sentenced Petitioner to 168 months of imprisonment. (Id. at 12). Petitioner appealed. His counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), but questioned whether this Court erred in accepting Petitioner's guilty plea, whether the Court abused its discretion in imposing his sentence, and whether Petitioner had received ineffective assistance of counsel. United States v. Rebollar, 665 F. App'x 255 (4th Cir. 2016). The Fourth Circuit affirmed, holding that the guilty plea was properly accepted, that there was no procedural or substantive error in the sentence imposed, and that Petitioner's claim of ineffective assistance of counsel was not appropriately addressed on direct appeal. Petitioner timely filed the present motion to vacate in May 2017, arguing that both his trial counsel and his appellate counsel provided ineffective assistance. (Civ. Doc. No. 1). The Government filed its response in opposition on August 21, 2017. (Civ. Doc. No. 3).

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . .

. any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005). "When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992).

Petitioner first argues that trial counsel provided ineffective assistance during the plea-bargaining stage by not securing an agreement that "all sentencing factors attached to counts four and six would not be included in the PSR." (Doc. No. 1 at 4). He contends that he "was under the logical impression that when the government dismissed a count the sentencing implications for that count vanished." (Doc. No. 1-1 at 10, 18). In particular, he asserts that counsel should have secured a binding plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that the sentencing factors, specifically the adjustment under U.S.S.G. § 2D1.1(b)(1), did not apply. (Id. at 16-17). Although he admits that he would have pleaded guilty to Counts One and Four, he asserts that he would have insisted on proceeding to trial on Count Six. (Id.). He also contends that, but for counsel's performance, he would have received a lower sentence. (Id.).

Petitioner's first claim of ineffective assistance of counsel is without merit. Petitioner waived pre-plea claims of ineffective assistance by voluntarily pleading guilty, and his post-sentencing dissatisfaction with the plea agreement that his attorney negotiated does not establish ineffective assistance. Petitioner concedes that his plea of guilty to Count One was voluntary, Doc. No. 1-1 at 16, and any contention that he did not understand the potential applicability of

7

this enhancement is belied by his acceptance of the terms of the plea agreement, as well as his testimony at the plea hearing. See Lemaster, 403 F.3d at 221-22 (4th Cir. 2005) (holding § 2255 claims that contradict a petitioner's plea colloquy are deemed "patently frivolous or false," except in extraordinary circumstances). The fact that the parties had not agreed to a recommendation on the weapon enhancement was highlighted in both places. See (Crim. Case No. 3:15-cr-20-RJC-2, Doc. No. 65 at ¶ 7; Doc. No. 144 at 10). Petitioner's contention that he would have proceeded to trial on Count Six is misplaced because Count Six was dismissed as part of his plea agreement. Thus, Petitioner waived this pre-plea claim of ineffective assistance of counsel because he admits that his plea was voluntary. See Fields, 956 F.2d at 1294-96.

Further, Petitioner does not contend that his counsel told him that relevant conduct from the dismissed counts would not be used in sentencing him. Rather, his argument is based on his "logical impression." (Doc. No. 1-1 at 10). Petitioner's belief that counsel should have negotiated a better deal does not establish deficient performance. Based on the terms of the plea agreement, counsel had considered the weapon enhancement, but had been unable to get the Government to agree that the enhancement should not apply. Petitioner cannot show that any additional negotiating would have changed this outcome. Rather, counsel's actions in negotiating the dismissal of two counts of the Indictment, as well as preserving the right to argue regarding the applicability of the firearm enhancement, were objectively reasonable.

Finally, Petitioner also cannot show prejudice because he cannot show that counsel could have negotiated a better agreement, nor can he show that it would have been objectively reasonable for him to proceed to trial on Count Six. Rejecting the dismissal of a count that carried a mandatory minimum five-year sentence in order to try to prevent a two-level guidelines enhancement is not objectively reasonable. Moreover, there was ample evidence showing that

Petitioner possessed a firearm in connection with his drug-trafficking offense. Although he denied that the firearms found at the residence where he was staying were his, one of his coconspirators admitted to having given the firearms during the course of the conspiracy and stated that Petitioner also had a shotgun that he kept at that residence. (Crim. Case No. 3:15-cr-20-RJC-2, Doc. No. 130-1 at 4). Further, a coconspirator stated that he always carried a firearm, but he had had to persuade Petitioner not to take a firearm during one of his drug deliveries. (Id.). Petitioner's work in cover cars to protect the drugs and money also supports application of the enhancement. See (Id. at 5).

In sum, Petitioner's contention that counsel was ineffective for failing to negotiate away the two-level enhancement for possession of a dangerous weapon is denied as waived by his guilty plea and meritless.

Petitioner next contends that appellate counsel was ineffective for failing to argue that he was entitled to a minor role adjustment in light of Amendment 794, a clarifying amendment that was in effect at the time of sentencing. Courts should ordinarily only find ineffective assistance for failure to raise claims on appeal when "ignored issues are clearly stronger than those presented." Smith v. Robbins, 528 U.S. 259, 288 (2000) (internal citation and quotation omitted). Appellate counsel is not required to assert all non-frivolous issues on appeal. Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). Rather, "it is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues. Smith v. Murray, 477 U.S. 527, 536 (1986). Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). Additionally, the petitioner still bears the burden to show that there is a reasonable probability that, but for counsel's failure to raise an issue on appeal, the result of the

9

proceeding would have been different, i.e., he would have prevailed on appeal. See Robbins, 528 U.S. at 285-86.

Petitioner contends that appellate counsel provided ineffective assistance because he filed an Anders brief and did not argue that Petitioner should have received a minor role adjustment under Amendment 794, despite the fact that the Ninth Circuit Court of Appeals has held that this Amendment applies retroactively on direct appeal. (Doc. No. 1 at 5). Petitioner argues that he should have received at least a two-level reduction because other participants in the conspiracy played larger roles. (Doc. No. 1-1 at 22-23). He also asserts that this issue would not have been barred by his appeal waiver because the Fourth Circuit still had to consider the procedural reasonableness of his sentence. (Id. at 20 (citing United States v. Quintero-Leyva, 823 F.3d 519 (9th Cir. 2016)).

Petitioner's assertion that counsel was deficient for failing to raise Amendment 794 on appeal is without merit. First, counsel was barred by Petitioner's plea waiver from raising this issue. See (Crim. Case No. 3:15-cr-20-RJC-2, Doc. No. 65 at ¶¶ 18-19). Second, even if counsel could have raised this issue, it was objectively reasonable not to because Amendment 794 was a clarifying amendment that was in effect at the time of sentencing, and it did not establish that Petitioner played a minor role in the offense. Amendment 794 clarified the commentary to U.S.S.G. § 3B1.2, which addresses a defendant's mitigating role in the offense. In particular, the Amendment clarified that a defendant's conduct should be compared to that of other participants in the offense, not a hypothetical average participant. See Qunitero-Leyva, 823 F.3d at 523. Amendment 794 took effect in November 2015, and Petitioner was not sentenced until May 2016. Thus, the Amendment was in effect at the time Petitioner was sentenced. The record indicates that defense counsel properly argued that Petitioner's role in the

offense was minor compared to that of his codefendants, Doc. No. 94 at 1, and this Court rejected that argument based on the information in the PSR and the debriefings, Doc. No. 145 at 9. Any contention that this Court was unaware of, or failed to apply, Amendment 794 six months after its enactment is specious. Moreover, given Petitioner's extensive participation in the offense, including negotiating a source of supply, delivering multi-kilogram quantities of cocaine, collecting drug proceeds, and protecting other drug transactions by operating a cover car, he cannot show that counsel's failure to raise this issue prejudiced him. See Robbins, 528 U.S. at 285-86.

In sum, because Petitioner has shown neither deficient performance nor prejudice, this claim of ineffective assistance of counsel is denied. See Strickland, 466 U.S. at 687-88, 694.

**IV.    CONCLUSION**

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must

establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: September 8, 2017

Robert J. Conrad, Jr.
United States District Judge